Robert M. Seines
Attorney at Law
P.O. Box 313
Liberty Lake, WA 99019
509-844-6002
fax 509-255-6003

Attorney for Defendant

# UNITED STATES DISTRICY COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JESSICA ALEXANDRA GONZALEZ,<br><br>Defendant. | NO: 18-CR-00232-TOR-7<br><br>DEFENDANT'S SENTENCING MEMORANDUM AND MOTIONS FOR VARIANCE OR DEPARTURE |

Jessica Martinez, fka Gonzalez, by and through her attorney, Robert M. Seines, respectfully submits the following sentencing memorandum and motions for departure or variance.

**1.     BACKGROUND.**

On December 18, 2018 a 101-count indictment was filed in this court charging Jessica Gonzalez and 21 co-defendants with crimes related to a series of staged "accidents" orchestrated by defendant, William Oldham Mize from 2013 through 2018. Fraudulent insurance claims were made, and Mize

and the participants received money for their alleged personal injury and property damage claims from various insurers. All of the staged "accidents" were planned and overseen by Mize.

Jessica Gonzalez became acquainted with William Mize through her partner, Misael Reyes-Tajimaroa. Mr. Reyes-Tajimaroa was a friend of Mize's son, Will, who introduced Mr. Reyes-Tajimaroa and Ms. Gonzalez to the Mize family.

Under the Plea Agreement (ECF 939) Jessica Gonzalez was involved in two staged motor vehicle accidents. The first staged collision occurred on September 14, 2014 in Las Vegas. A 2001 BMW was driven into a 2006 Land Rover registered to and insured by Jessica Gonzalez.

Ms. Gonzalez had received the Land Rover as a gift by Mr. Reyes-Tajimaroa. She did not consent for the Land Rover to be used in the crash and her only participation involved her endorsement of checks from the insurers for damage to the vehicle (See Presentence Investigation Report, ECF 955 at ¶81, note 4 and ¶112).

Mr. Reyes-Tajimaroa participated in a number of the staged accidents. He told Ms. Gonzalez that Bill (William Oldham Mize) wanted to talk to her,

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 2 of 18

and he wanted her to do something. She told him "no" the first two times he mentioned this. The third time he said it was not fair that he was the only one providing money for the family. This caused a "big fight," after which, Ms. Gonzalez relented and agreed to participate in one staged accident -- just to end Reyes-Tajimaroa's haranguing about being the family's only provider (See PSR ECF 955 at ¶111).

The staged motor vehicle accident took place in Las Vegas on January 4, 2015. Jessica Gonzalez was the driver of a 2006 Jaguar. Mr. Reyes-Tajimaroa was the passenger. Another individual (not charged herein) purposefully drove a 2005 Mercury into the Jaguar. William Mize coached them what to say and how to act with law enforcement and EMTs at the scene. Ms. Gonzalez and Mr. Reyes-Tajimaroa (using the name "Misael Andrade") were transported to the hospital. Ms. Gonzalez was treated for a concussion, cervical strain, and shoulder injury that resulted in surgery. Mize (using the name "Phillip Novak") acted as their legal representative and submitted settlement demands to the at-fault driver's liability insurer and ultimately received settlement payouts totaling $221,647.44 (See Plea Agreement, ECF 939 at page 10; PSR, ECF 955 at ¶¶ 94 to 110.

Ms. Gonzalez was out of the country when the Indictment was filed in December 2018. Her father passed away in March of 2017. After that, her mother and she went to Mexico and stayed with family there. Ms. Gonzalez formally relocated there in 2018. The Court issued a summons for her to appear. She did not receive the summons and did not appear. A warrant was issued on January 23, 2019 (ECF 197). In the meantime, her daughter, Aeliana Martinez, was born in Guadalajara on April 16, 2019.

For the next year and a half, Ms. Gonzalez worked to obtain a US passport for Aelina. She was successful obtaining the passport for Aelina and arranged for her surrender at the San Diego port of entry on December 17, 2021 (ECF 916).[1] She waived extradition and was transported to E.D. Washington.

Her initial appearance was January 25, 2022. The court denied the United States' motion for detention, (See ECF 932) and she was released on January 26, 2022 and permitted to reside with her cousin Magali's family and

---

[1] Aelina was picked up by Ms. Gonzalez's cousin, Magali Esquada, and taken to her home in El Monte, CA. Ms. Gonzalez lives there now with Aelina and her older daughter Alexandra.

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 4 of 18

her children in California. There have been no violations of any release conditions since then.

2. **USSG SENTENCING GUIDELINE RANGE.**

The Presentence Report accurately depicts Jessica Gonzalez's criminal history (which is none) and, with one exception, correctly calculates her (advisory) sentencing guideline range (ECF 955 at ¶¶ 120 to 129):

**Offense Level:**

- Base Offense Level §2B1.1(a)                                              7

- Specific Offense Characteristics §2B1.1(b)                     +12
    (Loss exceeds $250,000 but is less than $550,000)

- Adjustment for Role §3B1.2                                              - 3
    (In between minor and minimal participant)

- Adjusted Offense Level                                                    16

- Acceptance of Responsibility: 3E1.1(a) and(b)            - 3

        Total Offense Level                                                      13

**Criminal History Category:**

- Criminal History Score (None)         1
- Zone                    C

**Guideline Range:**       12 - 18 months

This writer's one point of disagreement is the determination by probation that Ms. Gonzalez's role in William Mize's criminal enterprise fits her in between a "minor participant" and "minimal participant" under USSG §3B1.2 (See PSR, ECF 955 at ¶98). This results in a -3 point deduction rather than a -4 point reduction in the offense level. We contend that facts of the case clearly demonstrate Ms. Gonzalez was a "minimal participant" in the scheme. The descriptions of a "minimal participant" and "minor participant" are found in Application Notes 4 and 5:

> 4. **Minimal Participant.**—Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in the criminal activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.
>
> 5. **Minor Participant.**—Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

Probation accurately describes her role in Paragraph 191 of the Presentence Investigation Report (ECF 955) -- "Defendant appears to be one of the least culpable individuals in this matter." She had no information or understanding of

the scope or structure of Bill Mize's long term criminal enterprise until she learned about the 101 Counts and 22 individuals charged in the Indictment.

Ms. Gonzales also takes issue with being in Zone C of the Sentencing Table as a result of the Fraud Guideline concerning the number of points based on the amount of loss. See PSR, ECF 955 ¶192. This issue is discussed in the section of this sentencing memo addressing 18 U.S.C §3553(a) factors.

### 3.     APPLICABLE SENTENCING GUIDELINES AND MOTIONS AND GROUNDS FOR VARIANCE OR DEPARTURE.

**a.     William Oldham Mize exerted extreme coercion to influence Jessica Gonzalez and others to participate in his criminal enterprise.**

USSG § 5K2.12 notes a sentencing court may depart downward from the applicable guideline range if:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. ***Ordinarily*** coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 7 of 18

> property or similar injury resulting from the unlawful action of a third party or from a natural emergency. Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure. (*Emphasis added*).

The Ninth Circuit in *United States v. Garza-Suarez*, 992 F.2d 896 (9th Cir. 1993) analyzed the meaning of "ordinarily" in the phrase, "Ordinarily, coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury … ." The court determined that "ordinarily" in this context means that sufficient coercion to justify a downward departure need not always be accompanied by physical injury. 992 F.2d at 911-12. Instead, coercion can be other actions that would "nullify individual will," or be "stringent compulsion by threat of danger, hardship or retribution." The court also noted, as an example, "Religion has in the past tried to coerce the irreligious, by garish promises and terrifying threats." *Id*.

Here, William Oldham Mize presents as a twisted authoritarian leader with the extraordinary ability to exert his malevolent will, and bend and twist his people to put their lives at risk to help him steal money from insurance companies.

Therefore, while William Mize actions as director and producer of car crashes, falls down stairs and the like, might not afford the actors in the staged

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 8 of 18

accidents with a legal defense – this Court should recognize William Mize's malicious influence as a mitigating factor when assessing the appropriate punishment for the people he groomed into his minions.

**b.    Jessica Gonzalez was directly involved in a single staged accident and therefore a downward departure in offense level is appropriate.**

A departure based on aberrant behavior is appropriate where the conduct is a "short-lived departure from an otherwise law-abiding life" *United States v. Working,* 224 F.3d 1093, 1099 (9th Cir. 2000), *citing*, *United States v Colace*, 126 F.3d 1229, 1231 (9th Cir. 1997).

USSG §5K2.20(b) lists the requirements for a downward departure based on aberrant conduct. The departure is appropriate for "a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant for an otherwise law-abiding life.

Jessica Gonzalez had no criminal history before January 4, 2015 when she acted as the driver of a Jaguar in a staged accident in Las Vegas. She was in the car when it was purposely rammed by a Mercury Grand Marquis. William Mize orchestrated all of the details of the collision and acted as Ms. Gonzalez's and Mr.

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 9 of 18

Reyes-Tajimaroa's legal representative (under the name of Phillip Novak) in their fraudulent insurance claims.

Probation has verified that Jessica Gonzalez was not personally involved in the September 28, 2014 staged accident where her Land Rover was rammed by a BMW. She did not give her permission for her car to be used in the collision and only learned about the collision after the fact. Her only involvement was endorsing the checks for property damage to the Land Rover. See PSR, ECF 955 ¶81, note 4.

Likewise, Jessica Gonzalez has led a law-abiding life after the conclusion of the proceedings related to the January 4, 2015 staged accident.

**(c)     After taking the appropriate departures from the offense level guidelines Jessica will be eligible for a sentence without imprisonment.**

Ms. Gonzalez's calculated offense level is presently 13 which puts her in Zone C of the Sentencing Table.[2]

After taking the previously discussed grounds for downward departure into account should put Jessica Gonzalez at an offense level of 11 or less, which places

---

[2]     Twelve of the points are based on the amount of loss under USSG§2B1.1 of the fraud guidelines. We will explain why the loss amount is not a valid measure in the 18 U.S.C §3552(a) section of this memorandum

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 10 of 18

her in Zone B. USSG §5C1.1(c) provides:

> **(c)** If the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by--
>
> **(1)** a sentence of imprisonment; or
>
> **(2)** a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or
>
> **(3)** a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

Jessica Gonzalez was taken into custody at the San Diego port of entry on December 17, 2021. She remained in custody on this charge until she was released on January 26, 2022 after her initial appearance. She has therefore already served 40 days. This makes her squarely eligible for her remaining sentence to be supervised release and no further jail time under subsection 2 and 3 above.

**(d) Relative cost of imprisonment.**

USSG §5H1.4(b) also directs the Court consider the relative costs of treatment vs incarceration. Probation indicates that the annual cost of imprisonment in a BOP facility is $44,258. In comparison, supervision by

Probation is $4,454 and a Residential Reentry Center is $35,761. (See ECF 42, 305).

**4.      18 U.S.C. §3553(a).**

**(a)      The sentencing guidelines are the starting point but are advisory only.**

This Court is well familiar that the sentencing guidelines are just the "starting point in the initial benchmark" in determining a sentence. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 596 (2007). "The guidelines are not the only consideration, and the district judge should consider all of the 3553(a) factors to fashion the appropriate sentence." *Id*.

The sentencing court is not required to see "extraordinary circumstances" in order to impose a sentence outside the guidelines. *Id* at 495-96. The district court judge has had the opportunity to become familiar with the case and the defendant, and, as compared with the Sentencing Commission is "therefore, in a superior position to find the facts and judge there import under Section 3553(a) in each particular case." *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 570 (2007).

On review, the appellate court will first determine if the district court's

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

sentencing decision is procedurally sound. Then the appellate court will consider the reasonableness of the sentence imposed under an abuse-of-discretion standard. And "[w]hen conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 128 S.Ct. at 597.

**(b)    The Court can find reasons justifying a sentence outside the guideline range by considering the factors enumerated in 18 U.S.C. § 3553(a).**

After determining the sentence pursuant to the Sentencing Guidelines, a Court must consider the following factors pursuant to 18 U.S.C. § 3553(a):

> (a) **Factors To Be Considered in Imposing a Sentence**. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the

defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;(4) and (5) the United States Sentencing Guidelines and Policy Statements;

…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.18 U.S.C. § 3553(a).

"The overarching statutory charge to a sentencing court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008),

Probation has completed a detailed and thoughtful analysis regarding sentencing considerations in Ms. Gonzalez's case - and all of her co-defendants whose sentences preceded her's. In conclusion, Probation concluded:

> The defendant appears to be one of the least culpable individuals in this matter. Her participation did not appear to be motivated by greed, but rather due to pressure from her then significant other. Absent that relationship, it is doubtful the defendant would have become involved. *Although the defendant's role in the conduct has been considered under the guidelines, a sentence below the guideline range is likely sufficient to satisfy the need to promote respect the for the law, reflect the seriousness of the offense, to deter further criminal conduct, and provide safety to the community.* (Emphasis added).

See Final PSR ECF 955 at ¶191.

Ms. Gonzalez respectfully requests the Court to carefully consider if anything would be gained by incarcerating her for the guideline range of 12 to 18 months under the guidelines, **or** even for any length of time. Supervised Release or Probation is a far better alternative to incarceration beyond the 40 days she has already served.

(c)    **Questionable Fraud Guidelines**:    As previously stated the fact that the amount of loss is greater than $250,000 but less than $550,000 is the offense characteristic that has the most dramatic effect by increasing Ms. Gonzalez's total offense level by 12 per USSG 2B1.1(b) and into Zone C of the USSG Sentencing Table. However, courts and legal scholars have questioned the actual correlation between the amount of loss and the number of points to be added

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 15 of 18

to the base offense level.

The usefulness of the Guidelines' loss table in fraud cases was aggressively challenged by Judge Rakoff in *United States v. Adelson*, 441 F.Supp.2d 506 (S.D.N.Y. 2006):

> What drove the Government's calculation in this case, more than any other single factor, was the inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss. As many have noted, the Sentencing Guidelines, because of their arithmetic approach and also in an effort to appear "objective," tend to place great weight on putatively measurable quantities, such as the weight of drugs in narcotics cases or the amount of financial loss in fraud cases, without, however, explaining why it is appropriate to accord such huge weight to such factors. *See generally* Kate Stith & José A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 69 (1998).

441 F.Supp.2d at 509.

…

> What this exposed, more broadly, was the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense.

Id at 511.

In "Drawn from Nowhere": A Review of the U.S. Sentencing Commission's White Collar Sentencing Guidelines and Loss Data," *Federal Sentencing Reporter*,

Vol. 26, No.1, October 2013,[3] the author conducted a survey of cases and statistics from the U.S. Sentencing Commission and noted trends with respect to the application of the loss guideline, 2B1.1(b)(1)(I).

The author notes, the sentencing statistics show that:

> Courts are varying downward more often and at a greater magnitude in fraud cases than in any major offense category. The statistical evidence reviewed above strongly points to the concept of loss as the primary reason for the judiciary's increasing dissatisfaction with the fraud Guidelines. *Federal Sentencing Reporter*, Vol. 26, No. 1, page 25.

We respectfully suggest that the ongoing debate concerning the Sentencing Guidelines particular to fraud cases, are particularly relevant to Ms. Gonzalez's case.

### 5. RECOMMENDATION

Based on the facts in the record and the above memorandum, Jessica Gonzalez asks the Court to depart downward in its sentencing guideline calculation pertaining to the Offense Level to Zone A or B. Then, after consideration of USSG §5C1.1(c) and 18 U.S.C 3552(a), impose no further jail

---

[3] http://www.jstor.org/discover/10.1525/fsr.2013.26.1.19?uid=3739960&uid=2&uid=4&uid=3739256&sid=21104593273637  (The cost to download is $22).

time beyond the 40 days she has served, along with an appropriate term of probation and/or supervised release.

SIGNED this 11th day of August, 2022 at Spokane, WA.

s/ Robert M. Seines  
ROBERT M. SEINES  
Attorney for Jessica A. Gonzalez

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such to: George J.C. Jacobs III, Assistant U.S. Attorney.

s/Robert M. Seines